## COMMONWEALTH *vs.* DONALD J. MAHONEY.

Worcester.  April 6, 1987 — July 29, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law,* Admissions and confessions, Search and seizure, Self-incrimination, Assistance of counsel. *Evidence,* Videotape, Relevancy and materiality, Cross-examination. *Search and Seizure,* Arrest. *Practice, Criminal,* Assistance of counsel, Opening statement, Presumptions and burden of proof, Judicial discretion, Instructions to jury. *Motor Vehicle,* Operating under the influence.

At the trial of a complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, there was no ground under the Fourth Amendment to the United States Constitution for exclusion as evidence of a videotape recording of the defendant made at the police station during the booking procedure after his arrest, where no search or seizure was involved in police officers' observations of the defendant in an open area of the police station. [527]

A criminal defendant's right under the Fifth Amendment not to be compelled to be a witness against himself was not violated by reason of police officers' making a videotape recording of the defendant during the booking procedure following his arrest for operating a motor vehicle while under the influence of intoxicating liquor, where no testimonial or communicative evidence revealing the knowledge or thoughts of the defendant was involved. [527-528]

A criminal defendant's right to counsel under the Sixth Amendment was not applicable to booking procedures following his arrest. [528-529]

At a criminal trial, the judge did not err in admitting as evidence a videotape recording of the defendant made during the booking procedure following his arrest for operating a motor vehicle while under the influence of intoxicating liquor, despite the fact that the defendant had not at the time been given Miranda warnings, where the questions of police officers and answers of the defendant recorded on the videotape were not the kind of "custodial interrogation" to require Miranda warnings. [529]

The record of the defendant's trial on a charge of operating a motor vehicle while under the influence of intoxicating liquor, at which a videotape recording of the defendant made by the police during the booking procedure following his arrest had been admitted in evidence, made clear that the videotape had been properly authenticated by the arresting officer

who viewed the videotape prior to trial and who testified as to the procedure used in the videotaping process and to the contents of the videotape. [529-530]

At a criminal trial, the judge did not abuse his discretion in limiting the scope of defense counsel's opening statement to only that evidence he intended to offer. [530]

At the trial of a defendant charged with operating a motor vehicle while under the influence of intoxicating liquor in which a videotape recording of the police booking the defendant was admitted in evidence, the judge did not abuse his discretion by refusing to permit defense counsel to cross-examine the arresting officer as to whether he was aware of other instances in which videotape recordings of the booking procedure had been used in a trial for the same offense, where defense counsel's question was not relevant to the question of the defendant's intoxication. [530-531]

At the trial of a defendant charged with operating a motor vehicle while under the influence of intoxicating liquor, at which the defendant had testified that he was taking an antidepressant medication at the time of his arrest, the judge did not err in allowing the prosecutor to ask the defendant on cross-examination whether the defendant was aware that he was not to drink alcohol while taking his medication. [531-532]

At a trial on a charge of operating a motor vehicle while under the influence of intoxicating liquor, the defendant was not prejudiced by certain statements by the prosecutor in closing argument regarding a breathalyzer reading of .19 attained by the defendant. [532]

At a trial of a defendant on a charge of operating a motor vehicle while under the influence of intoxicating liquor, there was no error in the judge's instructions to the jury, when taken as a whole, as to the inferences to be drawn from evidence of a breathalyzer reading of .10 or above. [532-533]

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on March 18, 1985.

The case was tried in the jury session of that court before *Francis George*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Conrad W. Fisher* for the defendant.

*Phillip E. Shea,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, Donald J. Mahoney, was convicted of operating a motor vehicle while under the influ-

ence of intoxicating liquor in violation of G. L. c. 90, § 24 (1984 ed.). The defendant appealed, and we transferred the case to this court on our own motion.

Testimony at trial before a jury of six produced the following facts. At approximately 12:46 A.M. on March 17, 1985, Worcester police officer Frank Cummings arrived at the scene of an accident involving two automobiles. After ascertaining that no medical attention was required at the scene, Officer Cummings approached the defendant's automobile and detected the odor of alcohol. Upon questioning the defendant, Officer Cummings had some difficulty understanding the defendant due to the defendant's slurred speech. When the defendant stepped from his automobile, he stumbled and subsequently had difficulty walking to the front of the vehicle. The defendant did not respond when asked to perform two field sobriety tests. Officer Cummings then determined that, in his opinion, the defendant was under the influence of alcohol and placed the defendant under arrest.

The defendant was taken to the police station where the booking procedure was videotaped. At that time, the defendant was coherent and responsive. Later, being advised of his rights under G. L. c. 263, § 5A, the defendant was given a breathalyzer test and a reading of .19 resulted.

1. The defendant first argues that the videotape of the booking procedure was erroneously admitted in evidence and played before the jury in violation of the Fourth, Fifth, and Sixth Amendments to the Constitution of the United States and his rights under *Miranda* v. *Arizona,* 384 U.S. 436 (1966).[1] The defendant objected to the admission in evidence of the videotape on the grounds that, at the time he was being booked, he had not been advised that he was being videotaped or that the videotape would be used as evidence against him at trial.

---

[1] The defendant's brief also refers to the Declaration of Rights of the Massachusetts Constitution and to the Fourteenth Amendment to the Constitution of the United States. Because the defendant's arguments focus on the provisions discussed within the text, we do not address the merits of any possible arguments on his behalf under these additional provisions. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

The defendant does acknowledge, however, that during the booking procedure he was asked to look up because he was being taped but that at no time was he informed of the purpose of the taping.

We have stated that videotapes are "on balance, a reliable evidentiary resource." *Commonwealth* v. *Harvey,* 397 Mass. 351, 359 (1986). Consequently, videotapes should be admissible as evidence if they are relevant, they provide a fair representation of that which they purport to depict, and they are not otherwise barred by an exclusionary rule. See *Commonwealth* v. *Vitello,* 376 Mass. 426, 440 (1978). In this case, the defendant's recitation of alleged constitutional violations does not provide a ground for the exclusion of the videotape from the jury.

No Fourth Amendment violation occurred because no search or seizure was involved in videotaping the defendant. The booking procedure took place in an open area of the police station where any officers or passersby could observe the defendant. See *United States* v. *Dionisio,* 410 U.S. 1, 14-15 (1973); *Katz* v. *United States,* 389 U.S. 347, 351 (1967). Cf. *Commonwealth* v. *Sergienko,* 399 Mass. 291, 293-294 (1987); *Commonwealth* v. *Hason,* 387 Mass. 169, 172-173 (1982). The defendant does not argue that the observations by police officers at the booking procedure constituted a search. Consequently, there was no search when these observations were recorded electronically by videotape. See, e.g., *United States* v. *Caceres,* 440 U.S. 741, 750-751 (1979), quoting *United States* v. *White,* 401 U.S. 745, 751 (1971); *United States* v. *McMillon,* 350 F. Supp. 593, 596-597 (D.D.C. 1972); Annot., 27 A.L.R. 4th 532 (1984).

There was also no violation of the defendant's Fifth Amendment rights. The defendant's right not to be compelled to be a witness against himself does not extend to photographic or video recordings, but is limited only to evidence that is "testimonial" or "communicative" in nature. See *Schmerber* v. *California,* 384 U.S. 757, 764 (1966) (The Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak

for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture"); *Commonwealth* v. *Brennan,* 386 Mass. 772, 776 (1982); *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 758-759 (1977). See also *Thompson* v. *People,* 181 Colo. 194, 202-203 (1973); *People* v. *Fenelon,* 14 Ill. App. 3d 622, 626 (1973); *State* v. *Strickland,* 276 N.C. 253, 260-261 (1970); *Delgado* v. *State,* 691 S.W. 2d 722, 723-724 (Tex. App. 1985). Nor are we confronted with an objection to the introduction of "testimonial" evidence because the videotape included an audio recording of the defendant's responses to police questioning during the booking procedure. In *Commonwealth* v. *Brennan, supra* at 778, we stated that " 'testimonial' evidence, for the purpose of Fifth Amendment analysis, is evidence which reveals the subject's knowledge or thoughts concerning some fact." That case involved the performance of field sobriety tests administered for the purpose of determining whether a driver of a motor vehicle is under the influence of intoxicating liquor. We concluded that the performance of the tests did not violate the defendant's rights under the Fifth Amendment because the tests only forced the defendant "to exhibit his physical coordination, or lack thereof, for observation by a police officer." *Id.* at 779. No testimonial or communicative evidence was involved. Like *Brennan,* this case does not involve police attempts to reveal any "knowledge or thoughts" of the subject. The defendant's answers to the questions recorded by the videotape concerned only the defendant's name, address, age or other information necessary to the booking procedure. The videotape provided the jury with an opportunity to determine whether, from the defendant's bearing and manner of speaking, he was intoxicated. Consequently, like the field sobriety tests in *Brennan,* the responses to the police questions recorded by the videotape serve only to exhibit the defendant's "physical coordination." The defendant was not compelled to reveal thoughts or knowledge concerning some fact.

The defendant's arguments that his Sixth Amendment rights were violated must also fail. Our cases make clear that the Sixth Amendment right to counsel does not apply at the time

of an arrest. *Commonwealth* v. *Mandeville,* 386 Mass. 393, 401 (1982). *Commonwealth* v. *Smallwood,* 379 Mass. 878, 883-885 (1980). See *Kirby* v. *Illinois,* 406 U.S. 682, 688 (1972). Nor does the defendant succeed in his claim that the police questioning during the booking procedure violated his rights under *Miranda* v. *Arizona, supra.* Although no Miranda warnings had been given to the defendant at the time of the booking procedure, the questions by the police and answers by the defendant recorded on the videotape were not the kind of "custodial interrogation" with which the United States Supreme Court was concerned in that case. "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect" (footnote omitted, emphasis added). *Rhode Island* v. *Innis,* 446 U.S. 291, 301 (1980). Thus, the judge did not err in allowing the introduction of the videotape despite the fact that the defendant had not been given Miranda warnings. See *Palmer* v. *State,* 604 P.2d 1106, 1109 (Alaska 1979).

Finally, the defendant argues that the videotape was not properly authenticated because the Commonwealth did not present evidence to show that there were properly promulgated rules and regulations concerning the videotape procedure or that the operator of the videotape equipment was competent or experienced in the use of the equipment. See *People* v. *Strozier,* 116 Misc. 2d 103 (N.Y. Justice Ct. 1982). We disagree. The record makes clear that the videotape was properly authenticated by the arresting officer who viewed the videotape prior to trial and who testified as to the procedure used in the videotaping process and to the contents of the videotape. The testimony of Officer Cummings was sufficient to authenticate the videotape and render it admissible as evidence. See *Commonwealth* v. *Drayton,* 386 Mass. 39, 48-49 (1982); *Commonwealth* v. *LaCorte,* 373 Mass. 700, 703-704 (1977); *Commonwealth* v. *Lamoureux,* 348 Mass. 390, 393-394 (1965). Any concerns of the defendant concerning rules and regulations of

videotaping procedures and the competence of the operator were properly the subject of cross-examination and affected the weight, not the admissiblity, of the videotape.

2. The defendant next claims that the judge erred in limiting the scope of defense counsel's opening statement. The Commonwealth indicated in its opening statement that it would introduce the videotape of the defendant recorded during the booking procedure. When defense counsel commented that jurors should pay particular attention to certain actions of the defendant while viewing the videotape, the Commonwealth objected and the judge cautioned defense counsel that he was bordering on argument. When counsel returned to commenting on the videotape and what the jurors would not see, the Commonwealth again objected and the judge instructed counsel to focus only on evidence that he intended to offer. The judge further instructed counsel not to comment on the videotape. We conclude that there was no error.

"The proper function of an opening is to outline in a general way the nature of the case which the counsel expects to be able to prove or support by evidence." *Commonwealth* v. *Fazio,* 375 Mass. 451, 454 (1978), quoting *Posell* v. *Herscovitz,* 237 Mass. 513, 514 (1921), and cases cited. *Commonwealth* v. *St. Germain,* 381 Mass. 256, 271 (1980). See K. B. Smith, Criminal Practice and Procedure § 1839 (2d ed. 1983). Furthermore, an opening statement "may be limited by a trial judge, acting within his discretion, to particularized evidence which the defendant expects to adduce." *Commonwealth* v. *Murray,* 22 Mass. App. Ct. 984, 985 (1986). *Commonwealth* v. *Medeiros,* 15 Mass. App. Ct. 913 (1983). See *Commonwealth* v. *Clark,* 292 Mass. 409, 410 (1935); *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 614-617 (1981). The judge appropriately limited defense counsel to evidence that he intended to offer. Nor was the defendant prejudiced by the restriction. Counsel was able to direct the jury's attention to the same issues that he wanted them to consider by focusing on the proposed testimony of the defendant. Defense counsel also had a full opportunity to raise these issues during closing arguments.

3. The defendant also alleges error by the judge in restricting his cross-examination of the arresting officer. The judge sus-

tained an objection by the Commonwealth when defense counsel asked Officer Cummings whether he was aware of other instances in which videotapes of the booking procedure had been used in a trial where the charge was driving under the influence of intoxicating liquor. The defendant argues on appeal that this cross-examination was proper because it would have placed the jury in a better position to assess the value and weight to be given to the videotape. Again, the judge did not abuse his discretion in limiting the scope of cross-examination. *Commonwealth* v. *Maltais,* 387 Mass. 79, 90 (1982). *Commonwealth* v. *Ahearn,* 370 Mass. 283, 286-287 (1976), and cases cited. *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). While cross-examination concerning the absence of a videotape of the defendant where the police routinely videotape all defendants charged with driving under the influence of intoxicating liquor may be relevant to impeach the testimony of an arresting officer, see 1 R. E. Erwin, Defense of Drunk Driving Cases § 9.02[2] (3d ed. 1986); L. Taylor, Drunk Driving Defense § 4.5.2 (2d ed. 1986), defense counsel's question was not relevant in this instance to the question of the defendant's intoxication. There was no error.

4. On direct examination, the defendant testified that at the time of the incident he was taking an antidepressant medication called Nardil. The defendant argues that the judge erred in allowing the Commonwealth to ask the defendant on cross-examination, and over the objection of the defendant, whether he was aware that he was not to drink alcohol while taking Nardil. The defendant responded that he was not aware of any limitation. On appeal, he maintains that the question was improper because it contained prejudicial information which was not based on the evidence. There was no showing that the prosecutor acted in bad faith in asking this question, "implying the truth of a proposition he knew to be false." *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 414 (178). See *Commonwealth* v. *Barnett,* 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth* v. *White,* 367 Mass. 280, 284-285 (1975); *Commonwealth* v. *Marsh,* 354 Mass. 713, 720 (1968); *Commonwealth* v. *Granito,* 326 Mass. 494, 498

(1950). We have stated that "the cross-examiner should have a reason for asking any such questions and should be prepared to disclose that reason to the judge." *Commonwealth* v. *White, supra* at 284. The defendant had testified that he was taking Nardil, an antidepressant medication. The Commonwealth was warranted in asking whether the defendant had been warned that he should not consume alcohol, a commonly known depressant, while taking the medication. Consequently, there was no error.

5. Finally, the defendant maintains that the Commonwealth improperly stated during closing argument that a reading of .19 by a breathalyzer was almost twice as much or even nine points above the limit of .10 at which the jury could draw the inference that the defendant was intoxicated. Even assuming that the statement by the prosecutor was erroneous, there was no prejudice. The defendant objected, and the judge stated that he would instruct the jury on this issue. The totality of the charge cured any possible prejudice to the defendant which may have occurred during the Commonwealth's closing argument.

The defendant also claims that the judge improperly instructed the jury when he stated: "Above .10 the jury is entitled to draw the inference that he was under the influence of alcohol — .10 or above. The machine is calibrated to say at this point the person was under the influence of alcohol." While G. L. c. 90, § 24 (1) (*e*), speaks in terms of a "presumption" that a defendant was under the influence of intoxicating liquor if the percentage, by weight, of alcohol in the defendant's blood was .10 or greater, we have interpreted the statute as creating a "permissible inference" which the jury may employ in determining whether a defendant was intoxicated. *Commonwealth* v. *Moreira,* 385 Mass. 792 (1982). While the judge's statement that "the person was under the influence of alcohol" if the breathalyzer reading was .10 or above misstated the law, our reading of the judge's charge to the jury, taken as a whole, indicated that the jury were properly instructed.[2] "A jury charge

---

[2] In addition to stating that "[a]bove .10 the jury is entitled to draw the inference that he was under the influence of alcohol," the judge also in-

must be considered as a whole, not by bits and pieces." *Commonwealth* v. *McInerney,* 373 Mass. 136, 149 (1977), quoting *Commonwealth* v. *Gibson,* 368 Mass. 518, 527-528 (1975). Furthermore, defense counsel brought the error to the judge's attention at the side bar but, after a discussion with the judge, did not seek a corrective instruction. Consequently, we find no error in the judge's instructions to the jury.

*Judgment affirmed.*

---

structed the jury that the breathalyzer reading was "something that you should consider along with all the rest of the evidence in making your decision. It isn't something, of course, that you have to follow; but you must — you should consider this along with all the other evidence in making your decision being just as fair as you can to both parties and decide whether or not the defendant was under the influence of alcohol." In light of these statements, we conclude that the jury were properly instructed that a breathalyzer reading of .19 entitled them to draw the inference that the defendant was intoxicated but did not require that they make such a finding.